JUDGE SWEET

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
SANDRA BUTLER and RICKY GIBSON

                                   Plaintiffs,

    -against-

CITY OF NEW YORK and GILBERT TAYLOR,
as Commissioner of the New York City
Department of Homeless Services,

                                 Defendants.
------------------------------------------------------- x

15 Civ 03783

**JURY TRIAL DEMANDED**

**COMPLAINT**



RECEIVED
MAY 15 2015
U.S.D.C. S.D.N.Y.
CASHIERS

      Plaintiffs, by and through their attorneys, allege as follows:

### PRELIMINARY STATEMENT

    1.     This is an action for declaratory and injunctive relief as well as compensatory

damages brought under Title II of the Americans with Disabilities Act ("ADA"), Section 504 of

the Rehabilitation Act of 1973, the Due Process Clauses of the United States and New York

State Constitutions, and New York State and City civil rights statutes and regulations as well as

New York State Social Services Law and regulations.

    2.     This action involves allegations of discrimination on the basis of disability by the

New York City Department of Homeless Services ("DHS"). Sandra Butler and Ricky Gibson are

registered domestic partners. Sandra Butler is 32 years old and suffers from sickle cell disease,

chronic asthma, a seizure disorder, and hypertension. She requires the use of a walker and is

unable to access stairs. She is receiving treatment through systemic steroids which cause her

immune system to be susceptible to infection. Ms. Butler uses an oxygen tank and electric

oxygen concentrator and nebulizer several times a day and every night. Ricky Gibson is 34 years

old and suffers from lumbar spondylosis, cervical spondylosis and cervical radiculitis. He has

severe back pain and upon occasion needs the assistance of a cane. He also sometimes suffers from post-traumatic headaches and dizziness. The physical injuries, combined with dizziness, make it difficult for him to access stairs.

3.     Plaintiffs allege that by failing to accommodate their disabilities during the Adult Family Intake Center ("AFIC") application process, by placing them in conditional placements that presented disability-related barriers without offering them reasonable accommodations, and by finding the family ineligible for AFIC shelter on the basis that they could return to Ms. Butler's mother's home, when such an option was not viable due to the Plaintiffs' known disabilities as well as other reasons, DHS failed to reasonably accommodate Ms. Butler and Mr. Gibson's known disabilities.

4.     Plaintiffs allege that Defendants' failure to accommodate their disabilities reflect systemic deficiencies in the manner in which Defendants are administering the DHS shelter system,  that many other individuals with disabilities applying or residing in the DHS shelters face similar disability-related barriers and obstacles to obtaining services and program benefits, and bring this action to address their immediate needs and also enjoin the Defendants to engage in a careful re-examination and modification of their policies and procedures with respect to applications, placement, transfers, discipline, and rehousing assistance, so that those with disabilities have as much access to emergency housing and rehousing in stable and affordable and accessible apartments as others who do not have disabilities.

5.     Plaintiffs further seek, that in compliance with the rulemaking provisions called for under the City Charter, the City Administrative Procedure Act ("CAPA"), the Defendants provide those with disabilities, and the general public, notice and opportunity to review and

comment upon the rules that that they have developed – or need to develop -- pertaining to how requests for reasonable accommodations are to be made, decided upon, and, if necessary appealed.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). The action arises under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Due Process Clause of the United States Constitution.

7.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over plaintiffs' claims under the New York State Constitution and state and local laws prohibiting disability discrimination and the City Administrative Procedure Act.

8.      Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## PARTIES

9.      Ms. Butler and Mr. Gibson are currently homeless and without shelter.

10.     Ms. Butler has multiple disabilities including sickle cell disease, chronic asthma, a seizure disorder, and hypertension. Her mobility is impaired so she uses a walker. She also uses an oxygen tank and electric oxygen concentrator and nebulizer several times a day and every night.

11.     As a result of these medical conditions, Ms. Butler's ability to participate in many aspects of daily living, including breathing, walking, sitting and climbing stairs, is substantially limited.

12. Mr. Gibson has multiple disabilities as well, including lumbar spondylosis, cervical spondylosis and cervical radiculitis. He has severe back pain and upon occasion needs the assistance of a cane. He also sometimes suffers from post-traumatic headaches and dizziness.

13. As a result of these medical conditions, Mr. Gibson's ability to participate in many aspects of daily living, including walking, sitting and climbing stairs, is substantially limited.

14. Sandra Butler is a person with a disability within the meaning of the Americans with Disabilities Act ("ADA"); the Federal Rehabilitation Act ("Rehab Act"); the New York State Civil Rights Law; the New York State Human Rights Law; the New York State Social Services Law; the New York City Human Rights Law, as well as New York State and New York City regulations designed to protect people with disabilities from discrimination.

15. Ricky Gibson is a person with a disability within the meaning of the ADA, the Rehab Act; the New York State Civil Rights Law; the New York State Human Rights Law; the New York State Social Services Law; the New York City Human Rights Law, as well as New York State and New York City regulations designed to protect people with disabilities from discrimination.

16. Plaintiffs are eligible for shelter assistance as a family unit pursuant to regulations promulgated by the New York State office of Temporary Assistance, Title 18 New York Codes, Rules and Regulations, § 900.2.

17. Plaintiffs are qualified to participate in the shelter program administered by the New York City Department of Homeless Services.

18. Defendant City of New York is a municipal corporation chartered under the laws of the State of New York.

4

19.     Defendant Gilbert Taylor, as the Commissioner of DHS, is the head of an executive agency of the City of New York, which has responsibility for the operation and administration of the homeless shelter programs for New York City residents. The City of New York receives federal funding and is subject to the provisions of Section 504 of the Rehab Act, as well as Title II of the Americans with Disabilities Act; the New York State Civil Rights Law, § 40 - c; the New York State Human Rights Law (Executive Law § 296); and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-107(4)(a).

## FACTS

20.     Sandra Butler and Ricky Gibson are registered domestic partners who each have significant disabilities who were made homeless by Superstorm Sandy. They are medically dependent on one another and have been denied shelter by DHS in violation of the ADA.  They seek immediate injunctive relief requiring the City to provide shelter to them, as well as compensatory damages, and injunctive relief addressing the systemic deficiencies in the City's policies, practices and procedures as they relate to the DHS homeless shelter system that Defendant Taylor is charged with administering.

21.     Ms. Butler suffers from sickle cell disease, chronic asthma, a seizure disorder, hypertension and high blood pressure. She requires the use of a walker and is unable to access stairs. She is receiving treatment through systemic steroids which cause her immune system to be susceptible to infection. Her doctors have recommended that she should not share a bathroom with others because of the risk of infection. Ms. Butler uses an oxygen tank and electric oxygen concentrator and nebulizer several times a day and every night. The equipment provider gives her 12 oxygen tanks at a time which the she fills with the concentrator.

22.     Mr. Gibson suffered injuries in two automotive accidents.  He is diagnosed with lumbar spondylosis, cervical spondylosis and cervical radiculitis.  He has severe back pain and upon occasion needs the assistance of a cane. He also sometimes suffers from post-traumatic headaches and dizziness. The physical injuries, combined with dizziness, make it difficult for him to access stairs.

23.     Despite his limitations, Ms. Butler relies on Mr. Gibson to help her perform the tasks of daily living. She regularly suffers from asthma attacks, seizures and painful episodes relating to her sickle cell disease that cause her to lose her ability to function.

24.     At the time of Superstorm Sandy, in October 2012, Ms. Butler and Mr. Gibson were living in Far Rockaway. Their home was flooded in the storm, they lost many of their possessions and all of Ms. Butler's medical equipment. They were forced to abandon the home. After the storm, Ms. Butler and Mr. Gibson stayed with various friends and relatives and in Ms. Butler's father's car.  Ms. Butler also stayed in City shelters.

25.     On or about August, 2014, Ms. Butler and Mr. Gibson applied for emergency Temporary Housing Assistance ("THA") shelter from the elements at the DHS AFIC office at 30th Street and First Avenue in Manhattan.  The AFIC is the sole DHS intake office for families without minor children and no pregnant adults.

26.     Homeless New Yorkers have a right to shelter.

27.     Defendants' AFIC intake process does not accommodate and discriminates against people with disabilities. There are no medical staff on site at the AFIC who can assess the disabilities of clients applying for shelter or who can document their needs. Applicants who DHS

determines may have a disability are referred for an appointment off-site after their application is taken. This assessment, when completed, does not include an evaluation of a client's mental health needs.  AFIC staff repeatedly ask applicants for copies of medical documents they have already provided.

28.      Application for shelter involves a series of meetings with DHS staff in which very specific details regarding an applicant's personal and housing history are required, which can involve many meetings over many hours. This process can be emotionally and physically challenging for families in the midst of a crisis and poses an even greater challenge for families with physical and psychiatric disabilities. For many families, medical and mental health concerns may be undiagnosed or untreated and, as a result, their consequently exacerbated symptoms may pose further barriers to compliance with the application process.

29.      Applicants wait on hard plastic chairs in the small intake office for many hours and are not permitted to elevate their legs. No food is allowed in the intake office other than when bag lunches are provided twice per day. In addition, although the AFIC remains open overnight, no new applications for shelter are processed after 7:00 pm. Families who arrive after hours are made to wait in chairs inside the center until the following morning to begin the lengthy processing of their application the following day. There is no formal means to request a disability accommodation within this initial process, and applicants are given little or no verbal or written information about how they might request accommodation of their disabilities by AFIC staff.

30.      During the application process, applicants are given three one-hour breaks. Anyone who leaves AFIC at any other time will be deemed to have abandoned their application

and required to start the process again when they return. The lack of immediate assessment of a client's disabilities and needs may result in applications which are abandoned, gathering of inaccurate information leading to erroneous shelter denials, or families placed inappropriately in shelters they cannot access.

31.     Once an initial application is completed, applicants are referred for conditional placement, frequently very late in the evening. Many of the conditional placements offered cannot accommodate the disabilities of the applicants who are placed in them.

32.     AFIC staff did not accommodate Ms. Butler or Mr. Gibson's disabilities. They were required to wait long hours in the AFIC office and prohibited from elevating their legs. Ms. Butler was prohibited from plugging her medical equipment and told her application would be deemed withdrawn if she left to use it at a nearby hospital. No one assessed their needs for an accommodation. They suffered extreme discomfort and pain from remaining in the AFIC chairs for so long.

33.     Following their application, on August 13, 2014, AFIC staff placed Ms. Butler and Mr. Gibson at the El Camino Hotel on a "conditional" basis, pending their review of the family's application for emergency shelter. The El Camino failed to meet their needs because the elevators there frequently did not work; there were not enough electrical outlets in their unit to operate Ms. Butler's medical equipment; the room was dirty, requiring them to frequently sterilize it; there were vermin present; and pervasive smoke aggravated Ms. Butler's asthma.

34.     On or about August 23, 2014, AFIC staff determined that Ms. Butler and Mr. Gibson were ineligible for shelter on the basis that other housing is available to them with Ms. Butler's mother at 559 Beach 68th St., Far Rockaway. Based on information from a field visit to

the home on October 9, 2014, DHS staff concluded that Ms. Butler and Mr. Gibson had resided

at the address in the past, and thus could return. Ms. Butler and Mr. Gibson were forced to leave

their placement and return to the AFIC to reapply.

35.     During the application process, Ms. Butler and Mr. Gibson had informed DHS

that Ms. Butler's mother's home was unavailable to them for the following reasons:

a.   At least eight and as many as 13 other people live in the three-bedroom
     apartment, which has only one bathroom.  Sharing such close quarters would
     expose Ms. Butler to a risk of infection, contrary to her doctor's
     recommendation.

b.   The apartment is on the second floor. Both Ms. Butler and Mr. Gibson have
     great difficulty accessing the stairs to the apartment.

c.   Ms. Butler uses an oxygen tank and an electric oxygen concentrator and
     nebulizer. The apartment does not have adequate space for her medical
     equipment.

d.   Additionally, the apartment is already overcrowded.  The landlord, whose
     family lives across the street and monitors the property, will not allow
     additional people to reside in the apartment. The apartment is not governed by
     New York's rent regulation rules so they landlord could terminate or fail to
     renew the lease for this reason.

36.     Ms. Butler and Mr. Gibson reapplied for shelter several times following this

denial, and each time the process was the same: they would be forced to take all of their

possessions and return to the AFIC, reapply and spend as long as 24 hours suffering extreme

pain and aggravation of their medical conditions from sitting in the hard plastic chairs. They

would be placed in a filthy room at the El Camino (where, on one occasion, they found a dead rat

in their closet), or, on one application, at the Aladdin Hotel, where Ms. Butler was forced to

expose herself to infection in shared bathrooms, and there were also not enough electrical outlets

and pervasive smoke. When they were found ineligible and left again, they would be forced to

abandon whatever they could not carry, including food and medical equipment.

37.      Plaintiffs were not advised by DHS of what, if any, accommodations the

Defendants could offer them, nor were they provided information about how they could request

reasonable accommodations or appeal any decisions with respect to accommodations.

38.      Following each application, DHS would find Ms. Butler and Mr. Gibson

ineligible for shelter on the basis that they could stay at the DHS "Recommended Housing

Option" ("RHO"), 559 Beach 68th St. Ms. Butler and Mr. Gibson would reapply. At one point,

they requested an administrative "fair hearing" from the New York State Office of Temporary

and Disability Assistance ("OTDA") to review the DHS determination. At the hearing, DHS

agreed to re-evaluate the decision.

39.      DHS frequently denies additional shelter placements to families who it has

previously determined to be ineligible on the basis that they have other housing available to them

without adequately accessing whether a disability- related impairment of an applicant, or a

resident of the RHO, presents a barrier to the applicant living in that RHO.

40.      On or about December 15, 2014, when Ms. Butler and Mr. Gibson reapplied at

AFIC yet again, staff there told them they would not receive a new conditional placement. With

no other place to stay, they slept in the car, which was parked in Ms. Butler's mother's driveway, and connected the medical devices to an outlet in the house with an extension cord. The cold aggravated their medical conditions, causing them additional pain and suffering in addition to the pain caused by sitting up in the car all night.

41.     On December 17, 2014, Ms. Butler and Mr. Gibson returned to AFIC via Access-a-Ride, arriving at or about 8:00 am.  After experiencing significant pain from waiting in the AFIC chairs for several hours, they received a new placement at El Camino.  But over the weekend of December 27, 2014, AFIC staff again found the family ineligible for shelter on the basis of the same RHO. Ms. Butler and Mr. Gibson resumed sleeping in the car.

42.     On January 9, 2015, DHS granted the family a new placement at El Camino.  But again, after considering the case for four months, on May 8, 2015, AFIC staff again found the family ineligible for the same RHO.

43.     Ms. Butler and Mr. Gibson again slept in their car. Ms. Butler had a surgical procedure scheduled on May 12, 2015 to repair a device in her body which administers medication. On this basis, they requested on May 11 that DHS provide them with a placement. At 7:44 pm, DHS counsel contacted Legal Aid staff to offer the family a placement for the night if they could provide documentation of the surgery. At that time, Access-a-Ride to was not available take them back to AFIC, where they feared another night in chairs prior to the surgery.

44.     Following the outpatient procedure, on May 12, 2015, Ms. Butler and Mr. Gibson returned to AFIC late at night to reapply but were not afforded an opportunity to do so. They again spent the night suffering in the AFIC waiting room chairs. On May 13, 2015, AFIC staff

again told them they would not be provided with a conditional placement because of the purported availability of the RHO.

45.     DHS counsel suggested to Legal Aid staff that the family could separate and seek shelter as individuals in the DHS shelter systems for adult men and adult women, respectively, despite the fact that, pursuant to New York State Social Services Law, § 131(3), Defendants are mandated to provide services in a manner such that "as far as possible, families shall be kept together they shall not be separated for reasons of poverty alone, and shall be provided services to maintain and strengthen family life," and dividing the Plaintiff family placing each of them in separate, sex-segregated shelters would not be the "most integrated setting" available to families in the DHS shelter system.

46.     As a result of the defendants' actions and omissions, Ms. Butler and Mr. Gibson have no safe place to sleep at night, and they have suffered emotional distress and a diminution of their ability to enjoy life.

47.     The number of homeless individuals has increased by more than 10% in each of the past two calendar years, and earlier this year reached a record high of over 60,000.

48.     The increasing number of homeless individuals applying for and residing in the DHS shelter system is making it more difficult for the Defendants to provide reasonable accommodations to those applying for and residing in the DHS shelter system.

49.     A substantial number of people applying for shelter in New York City have one or more disabilities that meet the definition of a disability under the ADA.

50.     Defendants City of New York and Commissioner Taylor do not have effective procedures in place to ensure that individuals such as Ms. Butler and Mr. Gibson are provided

with shelter placements that meet their foreseeable needs for reasonable accommodations in terms of physical access to and within the shelter facilities in which they are placed so that these homeless individuals are not faced with unreasonable architectural barriers.

51.    Defendants City of New York and Commissioner Taylor do not have effective procedures in place to ensure that homeless individuals with disabilities, such as Ms. Butler and Mr. Gibson, are provided with information as to their rights under the ADA, including but not limited to procedures for filing requests for accommodations, grievances and appeal procedures.

52.    Defendants City of New York and Commissioner Taylor have failed to train and supervise the staff at DHS regarding the requirements of the Americans with Disabilities Act and how to accommodate clients with disabilities in the application process, in placing applicants in DHS shelters, and in addressing needs for reasonable accommodations that may arise while the person or family is in a DHS shelter, including the accommodations they may need to find and secure accessible and stable permanent housing.

53.    The Defendant Taylor and the New York City Department of Homeless Services have not published for public comment pursuant to procedures set forth in the New York City Charter, Chapter 45, § 1043, City Administrative Procedure Act (CAPA), the rules pertaining to how individuals can apply for or receive reasonable accommodations within the homeless in shelter system administered by Defendant Taylor.

54.    Defendants regularly deny homeless individuals, including those with a disability, access to shelter based on allegations that there are RHO's available to them without making adequate investigations as to whether such accommodations are in fact available, and whether such accommodations are not accessible to applicants because of their disabilities.

55.     Plaintiffs have no plain and adequate remedy at law to redress the Defendants' ongoing deprivation of their rights under the Americans with Disabilities Act, federal Rehabilitation Act, the due process clause of the United States Constitution, and the various State and local laws which Defendants are alleged to have violated.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

**A.     Discrimination Claims**

56.     The City of New York and DHS are "public entities" within the meaning of the ADA, 42 U.S.C. § 12131(1), and U.S. Department of Justice implementing regulations, at 28 C.F.R. 35.104.

57.     Plaintiffs Sandra Butler and Ricky Gibson have at least one "disability," as that term is used in the ADA. Plaintiffs are both a "qualified individual with a disability" as defined under the ADA, 42 U.S.C. §12131(2) and 28 C.F.R. § 35.104, because plaintiffs are individuals with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meet the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the City of New York and DHS.

58.     Defendants discriminated and continue to discriminate against plaintiffs in violation of 42 U.S.C. §§ 12132 and its implementing regulations, 28 C.F.R. §§ 35.130, in the following ways:

(A) Defendants discriminate against plaintiffs by failing to provide reasonable modifications necessary for them to obtain temporary shelter in violation of 42 U.S.C. § 12112(b)(5)(A) and 28 C.F.R. §§ 35.130(b)(7).

(B) Defendants discriminate against plaintiffs by failing to provide plaintiffs with temporary shelter and other DHS program benefits in a manner that is as effective in affording equal opportunity to obtain the same result, gain the same benefit and reach the same level of achievement as that provided to others, in violation of 28 C.F.R. 35.130(b)(1)(ii)&(iii);

(C) Defendants discriminate against plaintiff by using methods of administration that subject plaintiffs to discrimination in violation of 28 C.F.R. §§35.130(b)(3)(i)-(ii); and

59.     With respect to each kind of discrimination, paragraphs (A)-(C), defendants discriminated or continue to discriminate against plaintiffs because of their disabilities.

**B.     Notice Claim**

60.     Defendants City of New York and Commissioner Taylor violated the Americans with Disabilities Act by failing to inform plaintiffs of their rights under the ADA and the manner in which they may seek a reasonable modification of DHS policies and to have DHS accommodate their disabilities in the process of applying for and placing them in a family shelter in violation of 28 C.F.R. § 35.106.

## SECOND CLAIM FOR RELIEF
## VIOLATIONS OF THE REHABILITATION ACT

**A.     Discrimination Claims**

61.     Defendant City of New York is a "recipient" of "federal financial assistance," as defined by Section 504 of the Rehabilitation Act of 1973 and by implementing regulations promulgated by the U.S. Department of Justice, and the U.S. Department of Health and Human

Services, thereby rendering the City of New York and DHS subject to Section 504. 29 U.S.C. §
794(b)(1); 28 C.F.R. § 41.3(d)-(e); 45 C.F.R. § 84.3(f)-(h).

62.      The administration by the City of New York and DHS of the temporary shelter
program, which is funded in part with federal financial assistance, constitute "programs or
activities" subject to section 504 of the Rehabilitation Act of 1973. 29 U.S.C. § 794(b)(1).

63.      Plaintiffs have at least one "disability," as that term is used in Section 504 of the
Rehabilitation Act. Like the ADA, Section 504 defines a disability as a physical or mental
impairment that substantially limits one or more of the major life activities. 29 U.S.C. §
705(9)(B) & (20)(B).

64.      Plaintiffs are both considered a "handicapped person," as that term is defined in
regulations implementing Section 504. Section 504 regulations define a handicap as a physical or
mental impairment that substantially limits one or more of the major life activities of such
individual.  28 C.F.R. § 41.31(a) and 45 C.F.R. § 84.3(j), (l).

65.      Plaintiffs meet the essential eligibility requirements for the receipt of
temporary shelter services and therefore are both considered a "qualified handicapped person," as
that term is defined in regulations implementing Section 504. 28 C.F.R. § 41.32 and 45 C.F.R. §
84.3(l).

66.      Defendants discriminated and continue to discriminate against plaintiffs in
violation of 29 U.S.C. § 794(a) and its implementing regulations, 28 C.F.R. § 41.51 and 45
C.F.R. § 84.4, in the following ways:

(A) Defendants discriminate against plaintiffs by failing to provide reasonable
modifications necessary for them to participate in the temporary shelter program in violation of
29 U.S.C. § 794(a).

16

(B) Defendants discriminate against plaintiffs by failing to (i) afford them such benefits and services as are offered to families who do not include persons with mobility impairments in a manner that is equal to others; and (ii) by failing to provide them with benefits in a manner that is as effective in affording equal opportunity to obtain the same result, gain the same benefit and reach the same level of achievement as that provided to others, in violation of 28 C.F.R. § 41.51(b)(1)(ii)-(iii); 45 C.F.R. §§ 84.4(b)(2) and 84.4(b)(1)(ii)-(iii); and

(C) Defendants discriminate against plaintiffs by using methods of administration that subject the plaintiffs to discrimination, in violation of 28 CF.R. §§41.51(b)(3)(i)-(ii) and 45 C.F.R. § 84.4(b)(4)(i)-(ii); and

67.     With respect to each kind of discrimination, paragraphs (A)-(C), the defendants discriminated or continue to discriminate against plaintiffs because of their disabilities.

**B.     Notice Claim**

68.     Defendants City of New York and Commissioner Taylor violated Section 504 of the Federal Rehabilitation Act by failing to inform plaintiff of her rights under the Federal Rehabilitation Act and the manner in which she may seek a reasonable modification of DHS policies and to have DHS accommodate her disabilities in the process of placing her in a family shelter in violation of 28 C.F.R. 39.111 and 45 C.F.R. § 84.8(a).

**THIRD CLAIM FOR RELIEF**
**VIOLATIONS OF § 296.2(a) OF THE NEW YORK STATE HUMAN RIGHTS LAW**

69.     The homeless shelter program administered by DHS is a public accommodation. N.Y. Exec. Law § 292(9).

70.     Plaintiffs are people with a disability within the meaning of N.Y. Exec. Law § 292(21).

71.     Defendants City of New York and Commissioner Taylor subjected and continue to subject plaintiffs to discrimination in their civil rights on the basis of their disabilities by finding the family ineligible for shelter on the basis that they can return to a home which exacerbates their disabilities; and by adopting policies, procedures and methods of administration that have a disparate impact on disabled persons in violation of the State Human Rights Law. N.Y. Exec. Law § 296.2(a).

**FOURTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE REGULATIONS OF THE NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES**

72.     Defendants discriminated and continue to discriminate against plaintiffs in violation of 18 N.Y.C.R.R. § 303.1 including but not limited to the following ways:

(A) By establishing policies and practices which have the effect of discriminating against plaintiffs on the basis of handicap or disability in violation of 18 N.Y.C.R.R. § 303.1(a); and

(B) By denying plaintiffs an aid, care, service or other benefit and privilege on the basis of handicap in violation of 18 N.Y.C.R.R. § 303.1(b)(1); and

(C) By restricting plaintiffs in the enjoyment of an advantage or privilege enjoyed by others receiving aid, care, services, and other benefits or privileges on the basis of their handicaps in violation of 18 N.Y.C.R.R. § 303.1(b)(4).

**FIFTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW**

73.     Defendants City of New York and Commissioner Taylor are each a "person" subject to N.Y.C. Administrative Code § 8-107(4)(a).

74.     Plaintiffs have a disability within the meaning of N.Y.C. Administrative Code § 8-102(16).

75.     Defendants discriminate against plaintiffs in violation of N.Y.C. Administrative

Code § 8-107(4)(a) by refusing, withholding from or denying plaintiffs accommodations,

advantages, facilities or privileges because of her disabilities, and by engaging in practices which

have the effect of discriminating against them.

### SIXTH CLAIM FOR RELIEF
### VIOLATIONS OF THE NEW YORK CITY CHARTER,
### CITY ADMINISTRATIVE PROCEDURE ACT

76.     To the extent that the Defendants have devised policies, procedures and protocols

with respect to how individuals applying for, or residing in, DHS shelter facilities, such policies

procedures and protocols constitute "rules" within the meaning of the City Administrative

Procedure Act, § 1041(5).

77.     By failing to follow the rulemaking procedures required under CAPA, Defendants

have proceeded to impose a regimen of rules with respect to how people with disabilities are

treated when they apply for, or reside in, the DHS shelter system, without ever having presented

them in a structured manner for comment and review by people with disabilities, community

boards, civic organizations, the news media, member of the City Council and the general public,

in violation of CAPA § 1043(b)(1)and(2).

### SEVENTH CLAIM FOR RELIEF
### VIOLATION OF PLAINTIFFS' RIGHT TO DUE PROCESS OF LAW

78.     Plaintiffs' have a protected property interest in their right to emergency shelter.

79.     Plaintiffs have a protected liberty interest in their right to be treated as a lawfully

registered couple.

80.     Defendants' denial of Plaintiffs' application for shelter, and their offer to

conditionally place them only in sex-segregated shelters was arbitrary and capricious and

irrational given the known facts about Plaintiffs, in that a fair and reasonable evaluation of their application would not have relied on RHO at which they were a) unwelcome and uninvited; b) overcrowded and c) inaccessible, and as such in violation of Plaintiffs' right to due process of law as protected under the Fourteenth Amendment of the United States Constitution and Article I § 6 of the New York State Constitution.

### EIGHTH CLAIM FOR RELIEF
### VIOLATION OF PLAINTIFFS' RIGHT TO BE SHELTERED TOGETHER PURSUANT TO NEW YORK STATE SOCIAL SERVICES LAW

81.     In offering to provide plaintiffs conditional shelter only if they were willing to go in to separate, sex-segregated at different locations, Defendants violated N.Y. State Social Services Law § 131 (3), by failing to offer them services in a manner that kept the family together and strengthened family life.


### PRAYER FOR RELIEF

WHEREFORE, plaintiffs requests that this Court grant them the following relief:

1.     Adjudge and declare that the policies, practices, omissions and conditions described above are in violation of the rights of the plaintiffs under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the Due Process Clause of the United States and New York State Constitutions, the New York State Civil Rights Law, the New York State Social Services Law and its implementing regulations and the New York City Civil Rights Law and the New York City Charter, City Administrative Procedure Act.

2.     Permanently enjoin defendants, their agents, employees and all persons acting in concert with them:

(A) to offer plaintiffs a shelter placement which can accommodate their disabilities, including but not limited to, plaintiffs' need to have access to an elevator or a first floor unit, space to plug in their medical devices, and an individual bathroom.

(B) from assigning plaintiffs to any homeless shelter, room, or other abode which does not accommodate their disabilities.

3.      Order defendants to develop policies and procedures to ensure that plaintiffs are informed of their rights under the Americans with Disabilities Act.

4.      Order defendants to develop policies and procedures to ensure that plaintiffs will have an opportunity to reasonably object to any future transfer or reassignment on the ground that their need for reasonable accommodations based on their disabilities will not be met by such transfer or reassignment and/or that their rights under the Americans with Disabilities Act are being or will be violated.

5.      Order defendants to develop policies and procedures to ensure the appropriate assessment of shelter residents with disabilities so that their shelter placements will conform to law.

6.      Order defendants to train and supervise DHS employees, contractors and other agents in providing shelter and other services in a manner consistent with the Americans with Disabilities Act.

7.      Order defendants to refrain from employing methods of administration that have the effect of discriminating against plaintiffs based on their disabilities.

8.      Award plaintiffs, pursuant to 29 U.S.C. § 794(b), 42 U.S.C. § 1988, and 42 U.S.C. § 12205, and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-502(f), the costs of this suit and reasonable attorneys' fees and litigation expenses.

9.    Order defendants City of New York and DHS to pay plaintiffs such compensatory damages as may be awarded by the jury.

10.    Retain jurisdiction of this case until the defendants have fully complied with the orders of this Court, and there is a reasonable assurance that the defendants will continue to comply in the future; and

11.    Award such other and further relief as the Court deems just and proper.

Dated: May 15, 2015
New York, New York

By:_____
Seymour James
Adriene Holder
Judith Goldiner
Kenneth Stephens
Joshua Goldfein
Beth Hofmeister
Kathryn Kliff
THE LEGAL AID SOCIETY
199 Water Street, 3d Floor
New York, New York 10038
Telephone (212) 577-3300

*Attorneys for Sandra Butler and Ricky Gibson*