```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/20/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
SANDRA BUTLER; RICKY GIBSON; O'BRIEN
MORRIS; RICHARD EMMETT; ROSELLE DIAZ;
KEVIN FAISON; SHANIQUA JACKSON; CENTER
FOR INDEPENDENCE OF THE DISABLED, NEW
YORK AND COALITION FOR THE HOMELESS, for
themselves and on behalf of all others similarly situated,

                            Plaintiffs,

         -against-

CITY OF NEW YORK, THE NEW YORK CITY
DEPARTMENT OF HOMELESS SERVICES, STEVEN
BANKS, as Commissioner of the New York City
Department of Homeless Services,

                            Defendants.

------------------------------------------------------------------------ x

**STIPULATION AND ORDER**

15-CV-3783 (VEC)

     **WHEREAS** on August 16, 2021, the City proposed a plan to move the remaining New York City Department of Homeless Services (DHS) clients out of De-densification Hotels (also referred to as the "density hotels") and to conduct "look back" interviews with those clients who had already been moved out of the De-densification Hotels (the "Plan"), Dkt. 131;

     **WHEREAS** Plaintiffs agreed to most parts of the Plan but raised questions about the adequacy of the number of case managers to be staffed at the 19 remaining density hotels and called for the "look back" interviews to commence immediately;

     **WHEREAS** on August 17, 2021, the parties appeared for a hearing in this matter and the Court overruled Plaintiffs' objections to case manager staffing and the timing of the "look back" interviews; and

     **WHEREAS** the Court ordered the parties to file a joint stipulation that incorporates the City's Plan by August 19, 2021, so that the Court may so order said plan;

**NOW THEREFORE, IT IS STIPULATED AND AGREED AMONG THE PARTIES THAT**:

1. **Definitions**: The following definitions apply to this Stipulation:

    a. "**Density Hotel**" is a hotel that DHS used to shelter clients during the Covid pandemic to reduce the density of clients in congregate shelters.

    b. "**Day 1**" is the day that DHS serves the Cover Letter, RA Determination Notice, and/or Administrative Denial Notice on clients at a particular density hotel. The corresponding calendar date associated with any "Day 1" may differ by density hotel.

    c. "**Comparable shelter placement**" is the lesser of what the client requested or the client currently has. For example, if a client resides in a single room but their reasonable accommodation request may entitle the client to a double room, the client can be moved to a double-occupancy room and this would be considered a "comparable shelter placement." Likewise, if a client is in a double room, but has a reasonable accommodation request that might entitle the client to a single room, the client can be placed in a double room.

2. **Additional Outreach:** As of August 15, 2021, case managers have completed scripted interviews with over 85 percent of clients remaining in density hotels. With respect to the remaining clients who did not attend their interview appointments, DHS providers will make two additional attempts to engage the client to discuss any reasonable accommodation needs by serving the five-day appointment notices in person and/or leaving notices on clients' beds/lockers for those who cannot be found in person.

3. **DHS Will Provide Clients in Density Hotels with Notices reflecting their Reasonable Accommodation Determinations, As Applicable**: DHS will distribute a cover letter and notices, as applicable, to clients remaining in the density hotels. Signature logs will be kept confirming that the notice(s) was (or were) received by the client (*see* Dkt. 131-7). DHS will translate each notice as well as the cover letter into the languages required by Local Law 30.

    i. "Decision on Your Reasonable Accommodation Request" (*see* Dkt. Nos. 131-3 and 131-4) [1]: Clients who have submitted reasonable accommodation requests and supplied supporting documentation where it was requested, will receive a notice titled "Decision on Your Reasonable Accommodation Request." As discussed in the Timeline at paragraph 4, below, clients will

---

[1] The wording on these two forms is identical, but they have different DHS form numbers.

       receive this notice at least 5 days in advance of a move if there are any denials on the merits of their requests. This notice, as well as the Cover Letter described at subparagraph (iv) below, explains that the client must submit an appeal within 48 hours of receipt of the notice to maintain a comparable shelter placement in the upcoming move.

    ii.    "Administrative Denial of Your Reasonable Accommodation Request" (*see* Dkt No. 131-5): Clients who have not submitted the required supporting documentation from clinical professionals will receive an "Administrative Denial of Your Reasonable Accommodation Request" notice (hereinafter the "Administrative Denial Notice").

    iii.    Individualized Placement Notification (*see* Dkt. No. 131-6): This notice informs a client at least 24 hours before their move of the name and address of the facility they are moving to and the type of placement (single room, double room, or congregate dorm).

    iv.    Cover Letter (*see* Dkt. No. 131-8): All clients will receive a cover letter that explains the different types of notices being distributed to clients on "Day 1" as discussed in the Timeline at paragraph 4, below.

4. **Timeline**: DHS's timeline, which reflects the earliest date by which clients could be moved out of density hotels to a congregate shelter setting or another non-density hotel[2] is as follows:

- **Merit approval, no denial**: If a client's accommodation request is being granted then on Day 1 the client will receive both an RA Determination Notice notifying them that the request is being granted, and potentially a 24-hour Individualized Placement notice informing them where they will be moved. In such a case, because the client's accommodation request was granted, they could be moved as soon as Day 2.[3]

- **Merit denial, appeal submitted without determination of the appeal** by the time the density hotel closes: A client with a merit denial **who appeals the denial within 48 hours after its issuance and who has not received a determination on the appeal before the density hotel closes** would be moved to a comparable shelter

---

[2] Many clients have requested multiple accommodations and, thus, could receive a combination of both merit denials and administrative denials. These clients will receive the most generous applicable timeline.

[3] DHS may move a client who receives a decision on the merits that approves their accommodation request the day after they are informed of the decision in their favor. The decision of when to move this client will, however, depend on the circumstances and logistics. Instead of moving a single person out of a density hotel on "Day 2", DHS may wait a few days so that group move may take place. Again, the timelines reflected in this plan show the fastest or earliest that a client may be moved depending on the status or results of their accommodation request or appeal.

placement until the appeal is decided.

- **Merit denial, no appeal submitted**: A client who receives a merit denial **and does not appeal within 48 hours** can be moved to a congregate shelter setting on Day 5.

- **Administrative denial, subsequently submit documents**: A client who receives an administrative denial on Day 1 and submits documents anytime between Day 1 and Day 10 at 6 pm will receive a determination of their accommodation request on the merits on Day 11 or Day 12.
    - **If a client receives a merit denial and does not appeal the merit denial within 48 hours of receipt** then the client could receive the 24-hour Individualized Placement notice on Day 13, in which case the client can be moved on Day 14. (In the case of a client submitting documents late in the day on Day 10, if they do not appeal the determination they receive on Day 12 then they could receive a Placement notice on Day 14 and can be moved on Day 15.)
    - **If a client receives a merit denial and appeals the merit denial within 48 hours (and by 6 pm two calendar days after receipt)** then the client would be moved to a comparable shelter placement.
    - If a client receives a **merit approval**, they can be moved as early as the following day to a shelter that accommodates their needs, similar to Scenario No. 1, above.

- **Administrative denial, no documents submitted:** A client who receives an administrative denial on Day 1 and does not submit documents by Day 10 (by 6 p.m.) can be moved to a congregate shelter setting as early as Day 12. The client would receive the 24-hour Individualized Placement notice on Day 11.

- **Administrative denial, subsequently submits documents, but no final decision by the date the hotel is closing:** A client will receive a comparable shelter placement.

5. **Appeals**: During the implementation of this plan, the Appeals Committee will increase the number of staff members available from the four divisions that comprise the Appeals Committee. Specifically, the DHS office of Adult Services will have as a minimum three staff available to sit on the Committee, the Department of Social Services (DSS) Office of Disability Affairs will make at least three staff available, the DHS Office of the Medical Director will make at least six staff available, and the DHS Disability Access and Functional Needs office will make at least four coordinators available.  Throughout the pendency of the moves out of density hotels and while conducting the "Look Back" plan, the Appeals Committee will shorten its review process to a maximum of 72 hours (for appeals received on Friday and over the weekend) or a maximum of 48 hours (for appeals received Monday through Thursday).  Furthermore, the Appeals Committee will meet up to five times each week, as necessary, to process reviews under this time frame.

6. **Training**: DHS will facilitate the training of case managers using the PowerPoint presentation (*see* Dkt. No. 131-9). The trainings will be delivered using Zoom and

Zoom's reporting function will be used to take attendance and track participation for sessions.

7. **Pre-Move Site-Visits**: Five to 10 days before any move, DHS's Housing Emergency Referral Operations (HERO) division will conduct pre-move inspections at the 10 sites that are currently vacant where clients will be moving, to confirm their physical accessibility and readiness to receive clients. The results of these inspections will be recorded, and inspectors will look for ramps, steps, elevators, access to refrigerators, and accessible bathroom features.

8. **Senior Staff on Site on Moving Day**: DHS will have senior staff at both the departing and receiving ends of every move from density hotels for the duration of every move to answer questions and troubleshoot any issues that may arise. Senior staff includes the Deputy Commissioner, Associate Commissioner, or Assistant Commissioner, and/or DHS Program Administrators.

9. **Maximum Number of Clients Moved Per Day**: DHS will conduct all moves on weekdays and move no more than 100 clients a day out of density hotels, for a maximum of 500 clients per week. DHS will move clients out of no more than three hotels in any one day.

10. **Staffing**: DHS has identified additional staff to assist in the implementation of this plan through redeployment, temporary reassignment, and temporary staff hired though contracted vendors. . In particular, DHS's Office of Program Development and Implementation currently includes 12 temporary data entry specialists, six of which have been loaned to the unit by DSS' Office of Reasonable Accommodation. Furthermore, DSS's Customized Assistance Services has six staff members and eight temporarily redeployed nurses and licensed social workers to assist with the unit's workload. DSS' Office of Reasonable Accommodation has also hired seven temporary employees from a vendor. Additional staff will be identified or hired through these methods and assigned as needed between the critical units depending on need. Additionally, non-profit providers may redeploy staff from other sites should that become necessary to support this plan. The office will at a minimum retain these existing staff throughout the moves out of density hotels and while the "Look Back" plan is implemented.

11. **"Look Back" Plan:** For the approximately 5,000 clients moved out of density hotels, even those who were moved after the agreed upon script was implemented, DHS will conduct counseling on reasonable accommodations during their regularly scheduled Independent Living Plan (ILP) meetings. DHS will provide shelter case managers with a script for this purpose and instructions to read the script at their clients' upcoming ILP meeting. DHS will start the "Look Back" Plan 15 days after moves from density hotels resume, or on September 15, 2021, whichever is earlier. The Look Back Plan will be carried out over a 4-week period. The script is as follows:

DHS is committed to ensuring that the needs of individuals with disabilities or health conditions are met when assigning shelter placement. DHS is obligated to give certain types of help to make it easier for you to get access to the services you need. This type of help is called a reasonable accommodation. A few **examples** of the type of accommodations DHS can provide include things like:
- placement in an accessible unit for someone with limited mobility;
- diabetic meals for someone who has diabetes;
- access to a refrigerator for someone who has medication that needs to be kept cold; and
- placement in a unit with air conditioning for someone who needs that because of a breathing problem or because they take medication that affects their body temperature.

**If this is true for you, we can help you.** Please ask shelter staff for help. You have a right to ask for this kind of help at any time. **Do you have any other needs because of a medical condition or physical or mental disability that we should be aware of?**

To help us verify the type of reasonable accommodation that will meet your needs, you may have to provide us documentation from your medical or mental health provider. We will let you know if we need documents based on the type of accommodation you are requesting. We will give you at least ten days to gather your documents and can help you collect them.

If you think you will need help getting the documents, or if you know you will need this help, please sign the HIPAA form. This form gives us permission to talk to your medical or mental health provider only about your request. In some situations, we may not be able to give you this reasonable accommodation until we get and review the documents. DHS may deny your reasonable accommodation request without documentation so please let us know if we can help you.

Dated:      New York, New York
            August 19, 2021

| | |
|---|---|
| Beth Hofmeister<br>Joshua Goldfein<br>THE LEGAL AID SOCIETY<br>199 Water Street<br>New York, New York 10038 | GEORGIA M. PESTANA<br>Corporation Counsel of the City of New York<br>Attorney for Defendants<br>100 Church Street<br>New York, New York 10007<br>(212) 356-0873<br>ckruk@law.nyc.gov<br>ssprayre@law.nyc.gov |
| By: /s/ Joshua Goldfein (By SS w/ permission)<br>    Beth Hofmeister<br>    Joshua Goldfein | By:      /s/ Sharon Sprayregen<br>    Carolyn Kruk<br>    Sharon Sprayregen<br>    Assistant Corporation Counsel |

Dawn Smalls
Jacob Alderdice
JENNER & BLOCK LLP
919 Third Avenue, 38th Floor
New York, New York 10022

By: /s/ (By SS w/ permission)
    Dawn Smalls

---

The Clerk of Court is respectfully directed to close the open motion at docket entry 104.

SO ORDERED:

_[signature]_

HON. VALERIE E. CAPRONI
UNITED STATES DISTRICT JUDGE
Date: August 20, 2021